# In the United States Court of Federal Claims

No. 21-1035C

(Filed: July 2, 2021)

(Re-issued: July 15, 2021)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SYNCON, LLC,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant.*

Bid protest; pre-award bid protest; FAR 13.106-3(a) (2008); the "late is late" rule; best value determination.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

HOURIGAN CONSTRUCTION CORP.,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Shomari B. Wade*, Washington, DC, for plaintiff, Syncon, LLC, with whom were *Michael J. Gardner*, *Brett A. Castellat*, and *Christopher M. O'Brien*, of counsel.

*Robert E. Korroch*, Norfolk, VA, for plaintiff, Hourigan Construction Corp., with whom was *Anthony H. Anikeeff, Esq.*, of counsel.

---

[1] This opinion was originally filed under seal to afford the parties an opportunity to propose redactions of protected information. The parties agree that no redactions are necessary. The opinion thus appears in full. One typographical error has been corrected.

*Steven M. Mager*, Senior Trial Counsel, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *David Nimmich*, United States Department of the Navy, of counsel.

OPINION

BRUGGINK, *Judge.*

In this pre-award bid protest, Syncon, LLC ("Syncon") and Hourigan Construction Corp. ("Hourigan") allege that the decision of the United States Department of the Navy[2] (the "Navy") to reject plaintiffs' proposals as late was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Plaintiffs filed their respective motions for judgment on the administrative record on May 7, 2021. They seek a permanent injunction preventing the agency from commencing evaluation of proposals and making an award determination without consideration of plaintiffs' proposals and requiring the agency to include plaintiffs' proposals in the source selection and award analysis. The government filed its responses to plaintiffs' respective motions, along with its cross-motions for judgment on the administrative record. All motions are fully briefed.

Oral argument was held on June 28, 2021. Because the agency properly documented its decision and its analysis was reasonable, we deny plaintiffs' motions for judgment on the administrative record and grant the government's cross-motions.

BACKGROUND[3]

A. Solicitation

On November 6, 2020, the Navy issued a solicitation for an Indefinite Delivery Indefinite Quantity ("IDIQ") Multiple Award Construction Contract ("MACC"), seeking proposals from contractors to perform construction services for "Large General Construction Projects" primarily in

---

[2] Naval Facilities Engineering Systems Command Mid-Atlantic ("NAVFAC MIDLANT").

[3] The facts in the background are derived from the administrative record (ECF No. 22, 25, 34).

the Hampton Roads, Virginia area. The solicitation indicated that the agency anticipates awarding no more than six Firm Fixed Price ("FFP") IDIQ Design-Build ("DB")/Design-Bid-Build ("DBB") contracts to offerors with proposals presenting the best value to the government. The solicitation also explained that each basic contract will contain one base year with four one-year option periods. After the agency awards basic contracts, the solicitation stated that awardees will compete for task orders "based on best value, using the tradeoff process or lowest price technically acceptable (to include lowest price)." Solicitation, AR 23. Proposals would be rated based upon price and five non-price factors.

The solicitation required offerors to submit two proposals: a technical proposal as well as a price proposal. For each, the Navy required offerors to submit one copy electronically, two hard copies, and two CD-Roms. The solicitation stated that a complete proposal includes both the technical and price proposals.

Electronic versions of the proposals had to be sent to Ms. Holly Snow, Contract Specialist, via the Department of Defense ("DOD") Secure Access File Exchange ("SAFE") site.[4] DOD SAFE site is a web-based application managed by the Defense Information Security Agency ("DISA") which allows files to be sent securely to various government entities and employees. The solicitation directs that:

> a. The contractor shall send the contract specialist, Holly Snow, the contractor's email address who will be receiving the Drop-Off invitation to upload proposals to the DOD Safe Site no later than 5 days prior to the submission due date. Note: only two email addresses may be provided per Offeror.

> b. The Contractor will then follow the invitation drop off link sent to those specified email addresses to upload their electronic proposal submission by the stated due date and time, unless the date and time are changed via Solicitation Amendment, using the reference code sent by the contract specialist via DOD Safe.

---

[4] The DOD SAFE site is effectively the government's "installation designated for receipt of offers." *See* FAR 52.212-1(f)(2)(i)(B).

> c. The maximum file size of a package is 8 GB. Up to 25 packages may be uploaded per link.

Solicitation, AR 39. Section 5.2.5 of the solicitation specified that "Electronic Proposals not received by the time and date specified shall be treated in accordance with FAR 52.215-1 'Instruction to Offerors - Competitive Acquisitions' and may be rejected." AR 40.

The solicitation provides instructions to offerors regarding the use of DOD SAFE for submission of the electronic versions of proposals. Offerors were told that after sending files through DOD SAFE, an offeror would "receive a notification on the site 'Drop-Off Completed' 'Your files have been sent successfully.'" AR 128. Offerors were informed that they should keep a copy of this notification for their records, and that the agency would receive an email notification of the upload. The solicitation warns that "the submission of any proposal must be completed no later than the due date and time, unless the date and time are changed via Solicitation Amendment, using the link sent by the contract specialist." *Id.* Finally, the solicitation provides that "[t]he DoD SAFE system will record the date and time of package submittal. The date and time of package submittal recorded in DoD SAFE shall govern the timeliness of any proposal submission." AR 129.

B. Solicitation Amendments

The solicitation's original deadline for proposals was November 23, 2020 at 2:00 p.m. Eastern Standard Time ("EST"). The Navy issued sixteen amendments to the solicitation, which extended proposal deadlines, established separate due dates for the technical and price proposals, answered pre-proposal inquiries, and made other changes. Amendment 0009, issued on December 15, 2020, modified language throughout the solicitation and added additional instructions regarding use of DOD SAFE. The amendment states that offerors must request a DOD SAFE Drop Link for both proposals "no later than 5 days prior to the respective submission due date." AR 128. The amendment instructs offerors to "utilize the link provided in the automated email to take you to DOD SAFE" to submit each proposal. *Id.* Additionally, the instructions state that the DOD SAFE

> system will allow for inclusion of a short note to the Recipient and then the offeror will click to add files or drag and drop them. Click "Drop-Off Files" to send the files to the recipient. You should receive a notification on the site "Drop-Off Completed" "Your files have been sent successfully." Please keep this for your records. The file(s) are uploaded and an

email will be sent to the recipient notifying them of the "drop-off."

*Id.*

The amendment also provides additional instructions regarding the timeliness of proposal submission, stating that submission of a proposal must be completed prior to the deadline, "unless the date and time are changed via Solicitation Amendment." *Id.* The DOD SAFE system, it adds, will record the date and time of each proposal submission, and this record will govern the timeliness of an offeror's submission.

The amendment further advises that offerors must "allow adequate time to upload files which may be slower for non-DOD users and to avoid other technical difficulties that may be encountered," and that offerors are required to submit files in the format specified in the solicitation. AR 129. The amendment warns that "[f]iles that cannot be opened, or are otherwise missing the required content are the responsibility of the Offeror." *Id.*

Amendment 0009 reiterates that pre-proposal inquiries ("PPIs") are "due 14 days prior to their respective due dates," which "will correlate with any changes in proposal due date." AR 134-35. Amendment 0009 also established the following deadlines:

| | |
|---|---|
| Electronic Submission of Technical Proposal | December 22, 2020 by 1400 EST |
| Hard Copy Submission of Technical Proposal | December 30, 2020 by 1400 EST |
| Electronic Submission of Price Proposal | January 8, 2020 by 1400 EST |
| Hard Copy Submission of Price Proposal | January 15, 2020 by 1400 EST |

AR 128.

On January 7, 2021, the Navy issued Amendment 0012, which extended the price proposal due date for electronic submissions to Friday, January 15, 2021 and hard copies to Friday, January 22, 2021. On January 11, 2021, the Navy provided responses to approximately 85 PPIs through Amendment 0013. These responses provided information on work specifications necessary for the preparation of proposals and accurate pricing.

On January 13, 2021, the Navy issued Amendment 0014, which provided answers to approximately 33 additional PPIs. It further extended the price proposal electronic copy deadline by one business day, from Friday January 15, 2021 to Tuesday January 19, 2021 by 1400 EST, and extended

the hard copies deadline from January 22, 2021 to January 26, 2021 by 1400 EST.

The agency timely received several technical and price proposals, but the Contracting Officer ("CO"), Ms. Sidnia Finke, wrote a memorandum on January 21, 2021, explaining that three offerors which submitted timely technical proposals via DOD SAFE did not timely submit their price proposals:

> It appears there may have been technology issues with the DOD Safe site, though that cannot be confirmed conclusively. Enclosure (1) provides a timeline and description of the proposal delivery with each of the three Offerors: Hourigan, Korte, and SYNCON.
>
> a. Two of the three Offeors, SYNCON and Korte, stated that neither received a confirmation of upload screenshot after they submitted their proposals. Both ultimately submitted their proposals late in the day using their original links. Of note, the DODSafe links can only be used one time and the Offerors used their DODSafe links after the due date and time.
>
> b. Hourigan let their DODSafe link expire 4 minutes before proposal due date and time and did not request another link prior to submission and ultimately submitted their proposal via email the next morning. Of note, Hourigan did not express an issue with their DOD Safe link until after the due date and time of proposals. Also of note, the email drop request sent to Offerors states, "This link expires 14 days from the time of this email."

AR 5325.

The CO determined, however, that the agency was not prohibited from amending the closing time for proposals after the time passed to "accommodate even one offeror, where the motivation for the extension is enhanced competition."  AR 5325 (citing *Geo-Seis Helicopters, Inc.*, B–299175, B–299175.2, 2007 CPD ¶ 135 (Comp. Gen. Mar. 5, 2007) ("*Geo-Seis I*")).  Ultimately, she decided to extend the deadline based on "the best interest of enhancing competition," and "to allow for the maximum competition possible" by accepting the three offerors who already timely submitted technical proposals. *Id.*

On January 22, 2021, the CO's memorandum was implemented through Amendment 0015, which extended the deadline for electronic price proposals to January 25, 2021 at 1600 EST and hard copy proposals to February 1, 2021 at 1600 EST. The Contracting Specialist sent an email to all offerors on January 22, 2021, explaining that a new DOD SAFE link would be provided to each offeror and that, while resubmission was not required, offerors could modify their previously submitted proposals and resubmit. Thereafter, nine offerors, including Syncon and Hourigan, resubmitted proposals before the new January 25, 2021 deadline.

On January 25, 2021, the Navy received an agency-level protest from an offeror, B.L. Harbert International ("Harbert") challenging the Navy's decision to extend the deadline for submission of price proposals. Harbert cited to FAR provisions governing the treatment of late proposals (48 C.F.R. § 52.215-1), and noted that this court had determined in a different bid protest that an agency's *post-hoc* extension of a solicitation deadline to accommodate late offerors was a violation of regulations. *Geo-Seis Helicopters, Inc. v. United States*, 77 Fed. Cl. 633 (2007) ("*Geo-Seis II*").

On February 23, 2021, the Navy sustained Harbert's agency level protest, relying on this court's decision in *Geo-Seis II*. On February 24, 2021, the Navy issued Amendment 0016, notifying offerors that Amendment 0015 was "issued in error and was null and void," AR 171-72, because it was published after the closing date set by the last amendment, January 19, 2021 at 2:00 p.m.

The agency then sent letters to Syncon and Hourigan that it was sustaining the Harbert protest and that their proposals were "rejected due to late submission." AR 5441-42, 5436-37. The letters explain that the decision in *Geo-Seiss II* had the effect of overruling GAO decisional law upon which the agency relied in issuing Amendment 0015. *See* AR 5441, 5436 ("[Amendment 0015 was] based upon a series of GAO rulings indicating that agencies were permitted to extend closing dates for solicitations, even after the existing date for receipt of proposals had passed, in order to increase competition for the procurement.").

The letter sent to Syncon concludes that because the agency did not receive Syncon's price proposal via DOD SAFE until January 19, 2021, 4:26 p.m., after the closing date set by Amendment 0014, and because the circumstances surrounding the receipt of Syncon's proposal did not meet exceptions to the "late is late" rule under FAR Clause 52.215-1(3)(ii), Syncon's proposal would be rejected as late. Hourigan received a similar letter.

C.  Syncon's Submissions and Submission Attempts

Syncon timely submitted its technical proposal through DOD SAFE of December 22, 2020 at 11:45 AM EST and received a "Drop-Off Completed" "Your files have been sent successfully" notification upon submission.  AR 1884, 5528.  DOD SAFE sent an automated message to Ms. Snow informing her of the submission.

The agency found, however, that Syncon did not submit its price proposal through DOD SAFE prior to the 2:00 p.m. EST January 19, 2021 deadline.  On January 19, 2021, Ms. Mary Morris, Syncon's employee, emailed Ms. Snow at 1:56 p.m., seeking confirmation that Syncon's proposal had been received.  At 3:19 p.m., Ms. Snow responded, "I did not receive a DOD Safe link email yet. Please send me a screenshot or otherwise confirmation of your submission. Some have been delayed coming through." AR 5317.  At 3:55 p.m., Ms. Morris responded "I don't see what I can screen shot. The DOD safe sites don't go in the sent file. Please help. Can I try to resend? Can I send through email?"  AR 5316.  At 4:10 p.m., Ms. Snow responded, "I would attempt to contact the DOD Safe help [desk], or see if there is any kind of outbox record of sending. On my end, the request sent to Syncon has not been fulfilled." AR 5316.  Ms. Morris responded, "I just attempted to call DOD Safe help and can not get through without a pin number. There's nothing else I can do? I'm kind of begging here. You see the email I sent you asking for confirmation. We did send." AR 5315.

Ms. Snow replied that she "received a DOD Safe link at 4:26 p.m. with the price proposal." *Id.*  Ms. Morris then asked Ms. Snow if she could confirm that she received Syncon's "initial DOD SAFE submission that was sent yesterday (1/19/21) before the 2 p.m. deadline" and advised Ms. Snow that Syncon had a pending support ticket with the DOD SAFE Site Help Desk.  AR 5314.  In the same email chain, Ms. Morris wrote that she attempted to upload Syncon's price proposal to DOD SAFE on January 19, 2021 at 1:47 p.m. EST, but did not receive the "Drop-Off Completed" "Your files have been sent successfully" messages that Amendment 0009 indicates should be provided. *Id.*  She also stated that on January 19, 2021 at 1:49 p.m. EST, she attempted to upload the documents to DOD SAFE a second time, but again, did not receive the automated messages from DOD SAFE.

In the same email, Ms. Morris attached an image, entitled "relevant chrome history," of six different occasions on which she accessed the DOD SAFE site, times that she states correspond to her submission attempts: 1:47 p.m., 1:49 p.m., 4:08 p.m., 4:13 p.m., 4:16 p.m., 4:29 p.m.  She never, however, received a "successful submission" notification for any of these

submissions. Ms. Snow also provided screen shots of her January 19, 2021 browser history, email inbox, deleted emails, and clutter emails. None of these images show a confirmation from DOD SAFE for any of Syncon's submissions. Ultimately, the agency rejected Syncon's proposal because the electronic price proposal was received after 2:00 p.m. on January 19, 2021.

### D. Hourigan's Submissions and Submission Attempts

Hourigan timely submitted its technical proposal through DOD SAFE on December 22, 2020, and DOD SAFE sent an automated message to Ms. Snow informing her of the submission. On January 5, 2021 at 12:43:16 p.m. EST, at the request of Hourigan and Ms. Snow, the DOD SAFE site created an additional link for Hourigan to use for submission of its price proposal.

At 2:00 p.m. EST on January 19, 2021, Mr. Phillip Hodges, an employee of Hourigan emailed Ms. Snow asking her to confirm that she had received their submission. She responded that she had not yet received Hourigan's submission and that "[s]ome have been coming through delayed, or not at all." AR 5294-95. On January 20, 2021, Mr. Hodges responded by providing the price proposal that it had attempted to submit using the DOD SAFE Site link the previous day and a screenshot of a time stamp showing that the files were last saved at 1:51 p.m. EST, prior to the deadline. He also attached a screen shot to the email showing a message that its link "could not be found or has already been used" as proof that it submitted its proposal on time. AR 5295. She responded that this was insufficient proof of timely submission as the solicitation requires the following notification: "Drop-Off completed" "Your files have been sent successfully." AR 5296. As with respect to Syncon, Hourigan's proposal was also rejected as untimely.

### E. The Protests

Syncon filed a protest with this court on March 5, 2021. On March 15, 2021, we granted the government's unopposed motion for a partial remand to the Navy, to determine whether plaintiffs' proposals were received at the DOD SAFE site prior to the January 19, 2021 deadline, or whether the site was experiencing technical issues which may have impacted offerors (ECF No. 14).

Hourigan had previously filed a protest with the Government Accountability Office (the "GAO") on March 3, 2021, contesting the rejection of its proposal. On March 12, 2021, the GAO dismissed Hourigan's protest due to the pendency here of Syncon's related protest. Hourigan filed its protest here on March 16, 2021, after which we consolidated the actions.

On March 16, 2021, in compliance with our order granting a partial remand, the Navy sent a letter to DISA inquiring about the time of receipt of the price proposals from Syncon, Hourigan and Korte, a third bidder whose proposal had been rejected as untimely. Todd Edgall, DISA's representative, responded that Syncon submitted its proposal on January 19, 2021 at 16:21 EST, Hourigan did not submit its proposal on January 19, 2021, and Korte submitted its proposal on January 19, 2021 at 15:30 EST.

Mr. Edgall noted that there was no indication that DOD SAFE was experiencing issues at that time, as the database entries did not have large gaps between submissions or drop-offs.[5] Further, he stated:

> In full disclosure -- please note, this only indicates that DOD SAFE was operating properly. There may be any number of external factors that could have affected the companies' ability to upload files to DOD SAFE by the deadline -- including their own Internet service provider, as well as any circuit, router or security stacks along the way. DOD SAFE has no insight or control over those factors.

AR 5530-31.[6]

After reviewing the information provided by DISA, the CO issued a memorandum on March 25, 2021, which reaffirmed her original decision to reject plaintiffs' proposals as late as well as her finding that "that none of the referenced proposals met any of the exceptions to the 'late is late' rule set

_____

[5] DISA explained that

> For the two-hour period ((1700 – 1900 (12:00 – 2:00 EST))), there were no dropoff gaps greater than 21 secs -- and that was only one. For the [two] hour time-frame there were 3840 dropoffs ((avgs out to be 32 per minute)): 17xx (12:xx EST)-- 1898 dropoffs [and]18xx (13:xx EST)-- 1942 dropoffs

AR 5531. The court understands the term "drop-offs" to mean proposal submissions, although the recorded submissions are not necessarily related to this procurement.

[6] Mr. Edgall added that "Any additional error messages or behavior from the browser during the upload could be helpful. Internet upload speeds vary, however, it does not appear as though those were big files." AR 5531.

forth in FAR 52.215-1." *See* AR 5670-78. She explained that the first exception to the "late is late rule" provides that a proposal transmitted through electronic means is not late if it is received at the "initial point of entry to the Government infrastructure no later than 5:00 [p.m.] one working day prior to the date specified for receipt of proposals." 48 C.F.R. § 52.215-1(c)(3)(iii)(A)(1). The CO found that because "it is undisputed that none of the relevant proposals were received at the DOD SAFE point of entry by 5:00 p.m. EST on January 18, 2021 . . . [n]one of the proposals, therefore, meet the requirements of exception 1 to the 'late is late' rule." AR 5672.

The CO explained that the second exception, often referred to as the government control exception to the "late is late" rule allows for consideration of an otherwise late proposal where there is sufficient evidence to indicate that the proposal "was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers." 48 C.F.R. § 52.215-1(c)(3)(ii)(A)(2). The CO determined that "the information provided by DISA appears to clearly establish that none of the proposals from Syncon, Hourigan, or Korte were under the Government's control prior to the time designated for receipt of offers." AR 5673.

The CO found that the third exception, that a proposal "is the only one received," did not apply, as none of the proposals were the "only proposal received" in response to the solicitation. She also found that the fourth exception, commonly referred to as the "unanticipated event exception," did not apply. She explained that this exception applies when "an emergency or unanticipated event interrupts normal Government processes" so as to prevent proposals from being received "at the office designated for receipt of proposals" at the exact time specified in the solicitation and "urgent Government requirements preclude amendment of the solicitation," the time for the receipt of proposals is automatically "extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume." 48 C.F.R. § 52.215-1(c)(3)(iv). She determined that this exception did not apply to any of the late proposals because

> the information provided by DISA indicates that the DOD SAFE system did not suffer any type of interruption in service (neither emergency, unanticipated event, or otherwise) during the time period that Syncon, Hourigan, and Korte all allege they attempted to upload their proposals to the system. Specifically, all three offerors alleged that they attempted to upload their proposals to DOD SAFE during the period

> between 1:30p.m.-2:00p.m. EST. The DISA Declaration indicates that DISA has no information indicating DOD SAFE suffered any problems during that time period. In fact, to the contrary, DISA reports that DOD SAFE received just under 2,000 successful uploads/submissions during the hour preceding the soliciation's closing time. The information provided by the Declaration is also consistent with information Contract Specialist Holly Snow was previously provided directly by the DOD SAFE system regarding request codes she had distributed for this solicitation. That information indicated that more than 15 uploads/submissions were made successfully during the time period of 1:30p.m.-2:00p.m. EST utilizing the request codes. While Contract Specialist Holly Snow previously had observed that DOD SAFE emails informing her a request code had been used by an offeror to upload a submittal were not transmitted to NAVFAC MIDLANT immediately upon use of the request code, in light of the information from DISA this delay did not reflect a problem with DOD SAFE receipt of uploads/submittals.

AR 5673. In conclusion, the CO found that none of the exceptions to the "late is late" rule applied to any of the late proposals.

On April 13, 2021, the parties filed a joint motion for a second partial remand to the Navy to obtain additional information from DISA regarding the DOD SAFE site for the agency to determine whether reconsideration was warranted (ECF No. 31). The motion states that

> On April 2, 2021, counsel for Syncon contacted the counsel for the Government, alleging that DISA's remand declaration had failed to address several important matters. Counsel for Syncon sought consent to supplement the administrative record with additional information from DISA. To resolve this dispute without Court involvement, all parties conferred on April 7, 2021, at which time, counsel for Hourigan also raised several other questions that it requested that the agency consider. Although the United States objected to Syncon's proposed approach and contended that the Navy's decision was rational, because many of these questions fell within DISA expertise, and in the interests of efficiency and to permit the agency to review its conclusion in light of DISA's response to the plaintiffs' proposed questions, the parties agreed to jointly seek

a limited remand on specific matters in order to resolve their dispute.

AR 5679-81. In the motion, the parties agreed upon eleven additional questions that the agency would pose to DISA seeking clarifications regarding some of the statements made in DISA's original March 24, 2021 declaration, as well as additional information regarding DOD SAFE "request codes" that had not been part of the Navy's first inquiry. *Id.*

On April 14, 2021, we granted the parties' motion. Thereafter, defendant sent a letter to DISA which included eleven questions regarding operation of the DOD SAFE site and the efforts made by DISA to investigate the allegations made by Hourigan and Syncon. DISA responded to the letter by submitting two declarations, one from the DOD SAFE Database Administrator, Michael Clark and the second from Ethan Miller, the DOD SAFE Program Manager.

Mr. Clark confirmed that none of DISA's notification tools indicated a problem with DOD SAFE on January 19, 2021. Mr. Clark notes that seven DOD SAFE "trouble tickets" were opened between January 19-20, 2021. AR 5723. He added that one trouble ticket "was for Ms. Morris' upload issue." *Id.* He also stated that DOD SAFE does not track attempted or failed uploads, and thus he was unable to answer which attempt resulted in a successful upload. He stated that although Syncon provided screenshots of its browser history accessing the site, the screenshots only prove that Syncon visited the site and do not prove that Syncon attempted or succeeded in uploading. He explained that only a successful upload will be recorded on the database tables, and thus only Syncon's upload at 4:26 EST was recorded.

Mr. Miller stated that "a SAFE request code can be used as many times as necessary until it is expired by the system." AR 5714. Further, he stated that "there is a daily cleanup script that runs once daily. It is typically done early in the morning." AR 5715. He explained that a link only expires after the script runs and identifies which request codes are older than fourteen days. Mr. Clark further stated that "the Request Code will remain usable until the system registers the request code as expired." AR 5715.

On April 22, 2021, after reviewing the declarations provided by DISA, the CO reaffirmed her position that plaintiffs' proposals were not timely submitted and did not qualify for an exception to the "late is late" rule. She stated that "Ethan Miller's Declaration reveals that Hourigan's request code was still available for use at the time Hourigan alleges it attempted to upload its proposal" and that the system "did not record Hourigan's request

code as expired until 1:54 p.m. EST that same day." AR 5730. She also noted that although plaintiffs allege that their IT systems were functioning properly on January 19, 2021, "that fact, even if true, still does not establish that the DOD SAFE system was malfunctioning or was otherwise the cause for the protesters' unsuccessful uploads." AR 5731. After reviewing the information regarding DOD SAFE, she found that DOD SAFE "was operating properly on January 19, 2021" and it did not appear that it "was the reason that Syncon and Hourigan did not have their respective uploads transmitted to DOD SAFE by the required deadline." *Id.*

On April 23, 2021, the government filed a status report regarding the second remand, stating that after receiving further information from DISA, the agency determined that its original decision should stand (ECF No. 33 at 1). In sum, plaintiffs' proposals were subject to three separate rejections on timeliness grounds by the CO: the first on February 24, 2021, after Amendment 0015 was rescinded, the second on March 25, 2021, after the first remand, and the third on April 22, 2021, after the second remand. Plaintiffs challenge all three determinations, as well as the decision to rescind Amendment 0015.

## DISCUSSION

Our review is deferential in accordance with the standard set forth in the Administrative Procedures Act, 5 U.S.C. § 706, which is to say that we review agency action in a procurement for illegality and a lack of rationality. *Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). So long as the agency's decision was not irrational or otherwise illegal, we will leave it undisturbed.

After oral argument, it is apparent that plaintiffs challenge the agency's decisions in two respects: (1) the agency's decision to rescind Amendment 0015 was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law; (2) the agency three times improperly rejected their proposals as not meeting the exceptions to FAR Clause 52.215-1. Plaintiffs seek permanent injunctive relief preventing the Navy from commencing evaluation of proposals and making an award determination without consideration of plaintiffs' proposals and requiring the agency to include plaintiffs' proposals in the source selection and award analysis.

When considering whether to grant a permanent injunction, the court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of

injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Although an award of injunctive relief is based on consideration of this four-factor test, failure to achieve success on the merits is dispositive. *See Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008) ("[A] permanent injunction requires actual success on the merits."). For the reasons below, we find that all of plaintiffs' challenges lack merit and it is therefore unnecessary to consider the last three factors. We consider each of plaintiffs' arguments in turn.

As a preliminary matter, Syncon argues that the court should not consider the documents gathered during both remands as part of the administrative record, on the basis that our review should be limited to the agency's contemporaneous rationale for its decisions. Instead review should be limited to the record before the agency at the time of its decision, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), and "not some new record made initially in the reviewing court." *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Plaintiff asserts that the government's argument, which uses materials from both remands, is effectively a *post hoc* rationalization of the Navy's decisions and that our consideration of such materials would improperly convert the arbitrary and capricious standard to a de novo review.

While we agree that this court may not engage in a de novo review of a bid protest action, consideration of supplemental materials gained during a remand is not improper and does not transform the arbitrary and capricious standard to a de novo review. The Tucker Act grants this court the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. §1491(a)(2) (2012); *see* RCFC 52.2. Remand is a procedure that permits this court to give "due regard" to "the need for expeditious resolution of the action," 28 U.S.C. § 1491(b)(3), while permitting the agency to reconsider its decision after further development of the factual record. *Rollock Co. v. United States*, 115 Fed. Cl. 317, 334 (2014). After a remand, this court considers the whole record before the agency, not merely the record as it existed before the remand. *See, e.g, Knowledge Connections, Inc. v. United States*, 79 Fed. Cl. 750, 761 (2007), *dismissed*, 321 F. App'x 948 (Fed. Cir. 2008). Plaintiff has not shown any support for its argument that after exercising our statutory authority to remand, we must then ignore the results of the remands, particularly in view of the fact that Syncon consented to the first and sought the second.

A. The Navy's Decision to Rescind Amendment 0015 was Reasonable.

Plaintiffs argue that if the agency's rescission of Amendment 0015 was in error, then plaintiffs' proposals were timely as the amendment was still active when their electronic filings were received by DOD SAFE. Plaintiffs contend that the agency's rescission of Amendment 0015 was erroneous, and thus the Navy cannot retroactively invalidate their timely submissions.

The protestors argue that the Navy's rescission of Amendment 0015 was in error because it was based upon this court's holding in *Geo-Seis II*, 77 Fed. Cl. 633 (2007), which conflicted with the GAO's position that a CO can extend the closing date of a solicitation with a *post-hoc* amendment. *Geo-Seis I*, B–299175, B–299175.2, 2007 CPD ¶ 135 (Comp. Gen. Mar. 5, 2007). Plaintiffs assert that what matters is that *Geo-Seis I* was still good law at the GAO at the time of the CO's decision. Even after publication of this court's decision in *Geo-Seis II*, the GAO specifically cited its *Geo-Seis I* decision and held: "[T]here is no prohibition against a procuring agency issuing an amendment to extend the closing time for receipt of proposals after that time has passed to accommodate even one offeror, where the motivation for the extension is enhanced competition." *National Disability Rights Network, Inc.*, B- 413528, 2016 CPD ¶ 333 (Comp. Gen. Nov. 16, 2016) (quoting *Geo-Seis I.*, B–299175, B–299175.2, 2007 CPD ¶ 135 at 5 (Comp. Gen. Mar. 5, 2007)).

The government argues that because the agency later concluded that Amendment 0015 was not based on the relevant FAR regulations or the "late is late" rule but was contrary to these regulations, it was proper for the agency to rescind the amendment as it was not legal under FAR. We agree. The Navy's decision to rescind was rational and in accordance with law, as the CO reasonably determined that her prior amendment did not comport with the FAR, consistent with this court's decision in *Geo-Seis II*, which rejected the GAO's holding in *Geo-Seis I*, characterizing the opinion as "not persuasive," because it failed to reference or analyze the relevant FAR provisions governing late proposals. *Geo-Seis II*, 77 Fed. Cl. at 645 n. 28 at 645.

It was proper for the agency to rely on this court's decision as *Geo-Seis II*, as we conclude that it correctly interprets FAR's "late is late" rule. As Judge Lettow noted, issuing a *post hoc* amendment would "render the 'late is late' rule a nullity." *Geo-Seis II*, 77 Fed. Cl. at 645. While contracting officers are properly afforded considerable discretion "that discretion does not extend to violating the FAR," *Info. Scis. Corp. v. United States*, 73 Fed.

Cl. 70, 115 (2006), *on reconsideration in part*, 75 Fed. Cl. 406 (2007), nor does an agency have "discretion regarding whether or not to follow applicable law and regulations." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 512 (2006), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007).

Further, we agree with the analysis in *Geo-Seis II*, adopted by the CO here,[7] that even though the GAO decisions cited by plaintiffs support their position "as to the *nunc pro tunc* effect of *post-hoc* amendments, those GAO precedents reflect 'one of those Comptroller-General-created rules that is not reflected in the FAR,' . . . . Those GAO decisions are not persuasive and they will not be adopted." *Geo-Seis II*, 77 Fed. Cl. at 645 (citation omitted) (quoting Ralph C. Nash & John Cibinic, *Late Final Proposal Revisions: The Final Straw!*, Nash & Cibinic Report, Vol. 18, No. 4, P 16 (1997)).

Because the agency was reasonable in relying on this court's decision in *Geo-Seis II*, it was not arbitrary and capricious for the Navy to rescind the amendment.[8] *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) ("we have consistently reviewed agencies' corrective actions under the APA's 'highly deferential' 'rational basis' standard").

---

[7] The CO cited this court's decision in *Geo-Seis II* in its letter rejecting plaintiffs' proposals as late: "There is simply no basis in the FAR for the view that the Contracting Officer had discretion to render the 'late is late' rule a nullity." *Geo-Seis II*, 77 Fed. Cl. at 645; AR 5436, 5441.

[8] Syncon also asserts that this case is analogous to *Taahut v. United States*, in which the Federal Circuit upheld a CO's decision to extend the proposal deadline through an amendment posted after the deadline where multiple offerors experienced technical difficulties with a government submission portal. *Taahut v. United States*, No. 20-1726, 2021 U.S. App. LEXIS 7164 (Fed. Cir. March 11, 2021). Like *Taahut*, it argues, the CO here properly issued Amendment 0015, extending the deadline, because multiple offerors that had already submitted their technical proposals experienced "technology issues with the DODSafe site." AR 5325. Syncon incorrectly characterizes the facts in *Taahut*. The agency in that case "extended the deadline prior to the expiration of the time for proposal" and not after the deadline. *Id.* at *4. The formal amendment was not posted to the government server until after the deadline, but the trial court held (and the Federal Circuit agreed) that this was not dispositive because the "contracting officer had made the decision and communicated it to all offerors prior to the deadline." *Id.*

Next, Hourigan argues that the Navy's rescission of Amendment 0015 after an agency-level protest was arbitrary and capricious because the protestor, Harbert, failed to demonstrate how it was prejudiced by the Navy's extension of the solicitation's deadline. Hourigan asserts that a showing of prejudice is a necessary element of an agency protest, as FAR requires that an agency protest include a "[d]etailed statement of the legal and factual grounds for the protest, to include a description of resulting prejudice to the protester." FAR § 33.103(d)(2)(iii). Further, Hourigan points out that this court has found that a protestor "failed to carry its burden to demonstrate that it has suffered a nontrivial competitive injury, and therefore, has failed to show that it was prejudiced by the contracting officer's procurement error." *KGL Food Services WLL v. United States*, 2021 U.S. Claims LEXIS 679, at *38 (Fed. Cl. Apr. 22, 2021). It is true that, although Harbert stated in its protest that it was an interested party, it failed to offer any description of the anticipated prejudice. From this, Hourigan argues that Harbert was not an interested party because the protestor's direct economic interests were not affected by the Navy's actions, as it did not suffer a "'non-trivial competitive injury which can be redressed by judicial relief.'" *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362-63 (Fed. Cir. 2009)).

In its response, the government points out that an agency has the independent discretion to take corrective action to remedy its own perceived errors in response to an agency level protest.[9] We agree. An agency need only have a rational basis to take action to remedy its perceived errors. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018). In addition, a CO generally possesses broad discretion to exercise "personal initiative in procurement matters," so long as these actions are not otherwise prohibited by law. *Tyler Const. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009). Thus, it was reasonable for the agency to exercise its discretion in rescinding the amendment to correct its perceived errors.

B. The Agency Reasonably Found that Plaintiffs' Proposals Failed to Meet the Exceptions to FAR 52.215-1.

Plaintiffs both argue that the agency erred all three times it rejected their proposals as late because the circumstances surrounding their late

---

[9] The government argues in the alternative that the protestor was an interested party, but we do not need to address this question, as we find that the agency had discretion to address its perceived errors.

submissions meet the exceptions to FAR 52.215-1. FAR 52.215-1(c)(3), also referred to as the "late is late" rule, provides in relevant part:

> (i)    Offerors are responsible for submitting proposals, and any modifications or revisions, so as to reach the Government office designated in the solicitation by the time specified in the solicitation . . . .
>
> (ii)    Any proposal, modification, or revision received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered [unless certain specified conditions are met].

When interpreting the "late is late" rule, courts "have adhered to the plain text of the regulation, commenting that its requirement that offerors submit their proposals on time is a 'strict rule with very limited exceptions.'" *Geo-Seis II*, 77 Fed. Cl. at 640 (quoting *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 173 (2005)). Both plaintiffs argue that the unanticipated event exception applies in this case, and Syncon argues that the government control exception also applies to its submission. For the reasons given below, we find that neither applies.

1.   Unanticipated Event Exception

The unanticipated event exception to the "late is late" rule under FAR § 52.215-1(c)(3)(iv) applies when:

> [A]n emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

FAR § 52.215-1(c)(3)(iv). The crux of plaintiffs' arguments is that, despite the agency's investigation, which shows that DOD SAFE operated without problems on January 19, 2021, some unanticipated event must have occurred because there is no other explanation for their inability to upload their price proposals. In addition, they point to various allegedly inconsistent

statements made by the agency and DISA, which they argue should prompt the court's skepticism about the agency's explanations.

First, Hourigan points out that although the Navy notified offerors in the email drop request that the request link[10] expires fourteen days after issuance, DISA gave a conflicting response on request link expiration. Following the second remand, DISA's Ethan Miller explained that a daily cleanup script initiates the process of link expiration: the script "runs once daily" and "typically . . . early in the morning," and the link only expires after the script runs and identifies which request links are older than fourteen days. AR 5714. Mr. Clark also stated that the request link "will remain usable until the system registers the request code as expired." *Id.*

After the second remand, the CO concluded "Hourigan's request code was still available for use at the time Hourigan alleges it attempted to upload its proposal" and that the system "did not record Hourigan's request code as expired until 1:54 p.m. EST that same day." AR 5730. This conclusion, Hourigan argues, is inconsistent with DISA's statement on link expiration, as Hourigan's link should not have expired until the script was run the morning of January 20, 2021.[11]

Hourigan argues that the agency's expiration of its link is the unanticipated event that occurred which prevented it from successfully submitting its price proposal when it attempted to submit at 1:51 p.m. on January 19, 2021.[12]

Hourigan's suggestion that its difficulties in uploading its proposal are traceable to link expiration are of no avail. Although the agency was not aware of the inner workings of the DOD SAFE site's link expiration process prior to the remands, *i.e.*, that the server runs a script which identifies links as expired, this does not amount to an agency error.[13] The issue was not fully

---

[10] Also referred to by DISA as "the request code."

[11] Hourigan points to Mr. Clark's statement that "the Request Code will remain usable until the system registers the request code as expired." AR 5715. Hourigan also uses Mr. Miller's statement that link expiration via the script is typically run in the morning, as support for this statement.

[12] As support for its alleged attempted submission, Hourigan cites to an e-mail showing files had been last saved at 1:51:05 p.m.

[13] In fact, the agency's original statement that the code expires 14 days after

developed, but even if Hourigan's link expired prior to the submission deadline, that could not be characterized as error on the part of the agency.[14] Offerors were made aware that link expiration would occur 14 days after receiving the email with the DOD SAFE link and thus, expiration of the link was not an unanticipated event. Hourigan was on notice of the risk and could have timely sought a renewed link. In addition, the asserted inconsistencies are irrelevant. If, in fact, the link was not deactivated until the following day, it was kept available beyond the 14-day period. We find that the Navy reasonably determined that there was no emergency or unanticipated event which interrupted normal government processes to prevent proposals from being received by DOD SAFE. 48 C.F.R. § 52.215-1(c)(3)(iv); *see also id.* § 15.208(d).

Plaintiff argues that the agency is responsible for its late submission because something appeared to be amiss on the government servers during the time Syncon attempted its submission, and the agency's statements to the contrary are untrustworthy.[15] First, DISA could not explain why the DOD SAFE data purportedly recording Syncon's successful upload at 4:26 p.m.

---

issuance is still accurate, even though DISA later clarified that the link only expires after the script runs and identifies which request codes are older than fourteen days.

[14] This exception only applies when an unanticipated event prevents the government from receiving proposals at the site designated within the solicitation, rather than when such events prevent the offeror from transmitting its proposal. *Conscoop - Consorzia FRA Coop. Di Prod. E Lavaro v. United States,* 62 Fed. Cl. 219, 240-41 (2004).

[15] Plaintiff asserts that it is skeptical about DISA's response to an inquiry submitted during remand. In response to the question of why an offeror might not receive an email or notification after a proposal was uploaded successfully, DISA explained that it could have been "flagged as spam." AR 5724. Syncon asserts that this answer is contrary to DISA's response in *Naval Systems Inc. v. United States*, that "it would be impossible for any user . . . to receive a 'Drop-Off Completed' webpage without all of the preceding steps . . . haven taken place successfully." *Naval Sys. v. United States*, 2021 U.S. Claims LEXIS at *38. This statement, even if credited, would not establish that a protestor had successfully and timely completed its submission. In any event, it would be improper to import here a DISA statement from a different case with different facts and a different administrative record.

EST on January 19, 2021, does not correspond with Syncon's attempted submission times. But that observation merely repeats what the agency found—there was no proof at its end of receipt and it has no way of tracking failed efforts.

Next, plaintiff contends that the agency did not conduct a thorough investigation of the issues raised by offerors.[16] Instead, it asserts that the Navy incorrectly relied on the fact of successful submissions by other offerors as proof that the DOD SAFE site operated without issue on January 19, 2021. The latter fact is, however, relevant. As Judge Solomson noted, evidence that other bidders were able to access a system at the same time is strongly suggestive that a submission problem was not at the government's end. *Naval Sys. v. United States*, 2021 U.S. Claims LEXIS at \*39.

In sum, Syncon's arguments amount to nothing more than mere conjecture that the agency is withholding the truth.[17] While we recognize inconsistencies between responses given by the Navy and DISA, plaintiff's concerns "are not a sufficient basis to support judgment in plaintiff's favor." *Id.* at \*37. It was reasonable for the CO to rely on DISA to investigate whether DOD SAFE operated correctly on January 19, 2021. She considered the fact that DOD SAFE had 3,840 successful uploads/submissions during the referenced two hours preceding the 2:00 p.m. EST, January 19, 2021 submission deadline. AR 5518. Because the CO had no basis for questioning

---

[16] As support for this argument, Syncon points out that according to the record, the Navy did not contact DISA until the first remand in March 2021. Further, plaintiff refers again to two comments made by a DISA attorney, Ms. LaTonya McFadden, who served as an initial point of contact and subsequent conduit of information between the Navy and DISA, which it believes show bad faith on the government's part. We discussed this allegation in plaintiff's motion to supplement the record (ECF No. 43) and found that these comments do not rise to the level of bad faith.

[17] Syncon also disagrees with DISA's statement that it does not "track link access/utilization unless it resulted in a successful upload" and that "[it does] not track attempted or failed uploads," AR 5724-25, because it asserts DISA has shown the capability to determine whether a proposal arrived at its servers by providing screenshots showing the "upload time" and "scan time" of successfully uploaded proposals and the DOD site had certain notices stating that data stored on the website is subject to monitoring. AR 5528. Even crediting plaintiff's statements as accurate, we do not believe that this demonstrates an inconsistency in DISA's representations.

DISA's assertion that it could not track unsuccessful uploads to DOD SAFE, it was reasonable for the agency to rely on the information which the site did record.

Finally, Syncon concludes that because it did not experience any IT issues on its end and two other offerors also experienced issues uploading their submissions within a 20-minute time span, an unanticipated event must have occurred on the government's servers. Even presuming that Syncon experienced no internal IT issues, this does not mean that "an emergency or unanticipated event" interrupted "normal Government processes" so as to prevent proposals from being received "at the office designated for receipt of proposals." 48 C.F.R. § 52.215-1(c)(3)(iv). To illustrate this point, DISA observed in an e-mail,

> There may be any number of external [to DOD SAFE] factors that could have affected the companies' ability to upload files to DOD SAFE by the deadline – including their own Internet service provider, as well as any circuit, router or security stacks along the way. DOD SAFE has no insight or control over those factors.

AR 5531. The lack of any other explanation has never been found, by itself, sufficient to overcome the "late is late" rule. *Naval Sys. v. United States*, 2021 U.S. Claims LEXIS 487, at *15, *36-37 (Fed. Cl. March 26, 2021). Thus, even though the CO was willing to presume that Syncon had no internal issues with its IT systems, she reasonably concluded that this "still does not establish that the DOD SAFE system was malfunctioning or was otherwise the cause for the protestors' unsuccessful uploads." AR 5731. This determination was "within the bounds of reasoned decision making." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). Therefore, we find that it was reasonable for the agency to reject Syncon's proposal as late, as the unanticipated event exception to the "late is late" rule does not apply here.

## 2. Government Control Exception

Syncon goes on to argue that the agency's decision to reject its proposals as late was arbitrary and capricious, as the government control exception to the "late is late" rule applies to its submission. The evidence it relies on is much the same as what we have addressed above. The exception provides a safe harbor for an otherwise late proposal when four requirements are met: "(i) the offer is received before the award is made; (ii) consideration of the offer would not unduly delay the acquisition; (iii) the offer was

received at the government installation designated for receipt of offers; and (iv) the offer was under the government's control prior to the time set for receipt of offers." *Naval Sys.*, 2021 U.S. Claims LEXIS at *37 (quoting FAR 52.212-1(f)(2)(i)).

Syncon asserts that the record contains sufficient evidence that it timely submitted its proposal to DOD SAFE and that its proposal was within the government's control prior to the proposal deadline. It relies on the screenshots showing that it accessed DOD SAFE six different times. Additionally, though not part of the record, Syncon points to declarations of its employees who witnessed the attempt to upload its proposal.

In its response, the government retreats to the fact that there is no affirmative evidence that Syncon's proposal was received at the government installation designated for receipt of offers and was under the government's control prior to the deadline. We agree. As Mr. Clark determined after the second remand, the screenshots do not show a successful submission, but instead merely depict "browser history artifacts that show they had visited the site. In addition, the screenshots do not show a confirmation email from the DOD SAFE site. A successful upload results in a return message to the user stating the upload as successful." AR 5519.[18]

Aside from the statements of Syncon's employees[19] to the effect that Syncon tried to submit its files, there is no other evidence supporting the conclusion that plaintiff successfully uploaded its proposal in a timely manner or that the government received it before the solicitation's submission deadline. To the contrary, the government presents significant evidence that Syncon's proposal was not, in fact, timely uploaded and received by the DOD SAFE site.

---

[18] We disagree with Syncon that proof of an attempt to upload a proposal to DOD SAFE is sufficient to establish that the government had control of the proposal. The FAR indicates that the receipt of a proposal is a pre-requisite for this exception. 48 C.F.R. § 52.215-1(c)(3)(iii)(A)(2).

[19] Although we denied plaintiff's motion to supplement the administrative record with its employee's declarations, the record still includes allegations regarding Syncon's attempt to submit its proposal and of its IT systems functionality on January 19, 2021. *See* AR 5451-65 (describing statements from Ms. Morris who alleges that she timely attempted submission of the proposal on DOD SAFE); AR 5731 (showing Syncon's claim that its IT system ran properly on January 19, 2021).

The solicitation provides that "[t]he DOD SAFE system will record the date and time of package submittal. The date and time of package submittal recorded in DOD SAFE shall govern the timeliness of any proposal submission." AR 129. The site did not record a submittal from Syncon on or before the January 19, 2021 at 2:00 p.m. EST deadline. Rather, DOD SAFE recorded the submission of Syncon's price proposal at 4:26:13 p.m. EST, more than two hours after the deadline had passed. During both remands, DISA confirmed that DOD SAFE had not timely received Syncon's price proposal. Thus, it was reasonable for the CO to conclude that Syncon's price proposal was not received by DOD SAFE before the exact time specified for receipt of offers and was therefore late and could not be considered.

Next, Syncon argues that the agency did not undertake a good faith investigation to produce "acceptable evidence." FAR 52.215-1(c)(3)(ii)(A)(2). Syncon argues that the Navy did not investigate relevant data such as emails, IP addresses, or information about offerors' activities on DOD SAFE.[20]

The government contends that Syncon's allegations that DISA's and the Navy's responses were not in good faith and cannot be trusted are rebutted by the record. We agree. It is important to note that government officials are presumed to operate in good faith. *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). Bad faith and bias have long been likened to "specific intent to injure" the plaintiff. *Kalvar Corp. v. United States*, 543 F.2d 1298, 1302 (U.S. Ct. Cl. 1976). Here, rather than demonstrating any intent to injure Syncon, the Navy and DISA have shown a willingness to accommodate Syncon. The Navy amended the

---

[20] Plaintiff asserts that DISA has done more to investigate the facts in other bid protests, citing *KGL Food Services WLL*, 2021 U.S. Claims LEXIS at *6-16 (Fed. Cl. Apr. 22, 2021) (describing a search for emails that did not reach DISA's server), *Federal Acquisition Services Team, LLC. v. United States*, 124 Fed. Cl. 690, 702-08 (2016) (detailing a record of when an offeror's email was received by a DISA server), and *Naval Sys. v. United States*, 2021 U.S. Claims LEXIS at *44 ("[DISA] conducted a search of the DOD SAFE database for [the offeror's] IP address, which demonstrated that while [the] IP address had connected to DOD SAFE seventeen times in 2020, it did not connect to the system at all in [the relevant time period . . .]"). None of the cases are precisely on point, however, and it would in any event be improper to rely on DISA's investigations in protests with distinct facts and administrative records.

solicitation to permit Syncon and two other offerors to submit a late proposal, and only withdrew its amendment after determining that it did not comport with the "late is late" rule. Then the agency and DISA requested two remands to determine whether Syncon's proposal was late or might fall within an exception to the "late is late" rule. The fact that the remands did not produce the evidence that Syncon expected does not mean the investigations were performed in bad faith.

The record supports the determination that Syncon's proposal was not timely submitted. Thus, we conclude that the agency's decision to reject its proposal as late was reasonable. Plaintiff's motion for judgment on the administrative record based on the government control exception is denied.

## CONCLUSION

For the reasons given above, we find that the Navy reasonably rescinded Amendment 0015 and did not err in finding that plaintiffs' proposals failed to meet the established exceptions to FAR Clause 52.215-1. Not having shown success on the merits, we need not consider the other injunctive factors. No relief is warranted. Accordingly, plaintiffs' motions for judgment on the administrative record are denied. Defendant's cross-motions are granted. The Clerk of Court is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge